**In the Matter of Patricia DULCEAK, Plaintiff,**

v.

**Reid PAXSON and City of Northlake, Defendant.**

**No. 92 C 1628.**

United States District Court, N.D. Illinois, E.D.

Sept. 2, 1992.

Bruce A. Brennan, Huber & Brennan, Winfield, Ill., for plaintiff.

David Lincoln Ader, Deon W. Krone, Ancel, Glink, Diamond, Cope & Bush, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Patricia Dulceak ("Dulceak") brings this civil rights action pursuant to 42 U.S.C. § 1983 against Reid Paxson and the City of Northlake, an Illinois municipality, alleging abridgments of her First Amendment rights. She also alleges common law complaints against both Defendants for libel and slander. Defendants, in a combined motion, request that this court, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismiss the complaint in its entirety. For the reasons set forth below, we grant Defendants' motion.

## I. STANDARD OF REVIEW

In considering a motion to dismiss, the court accepts the factual allegations of the complaint as true. *See Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (citing *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir. 1990); *Brown v. State's Atty.*, 783 F.Supp. 1149, 1151 (N.D.Ill.1992). Furthermore, unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief," a court should not grant a motion to dismiss. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See also Yeksigian*, 900 F.2d at 102 (7th Cir.1990). Accordingly, the court views the well-pleaded complaint's allegations, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff. *See Balabanos v. North Am. Invest. Group, Ltd.*, 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986)).

## II. BACKGROUND

For the purposes of this motion, the facts underlying this dispute are as follows:

Dulceak is currently a member and Acting Secretary of the Zoning Board of Appeals and Plan Commission of the City of Northlake ("Zoning Board"). She previously held the additional position of Chairperson. On February 21, 1991, the Zoning Board met to discuss, among other things, Vencor Hospital's request for a Special Use Permit.

At the meeting, several residents expressed concerns about the permanent index numbers that were included on Vencor's application. Additionally, residents raised issues about the impact of the special use on certain easements that were allegedly to revert back to them as property owners. Dulceak's minutes note the residents' concerns and report that the city attorney, Francis Bongiovanni ("Bongiovanni"), agreed to ensure that all property index numbers and legal descriptions of the property were in order before presenting Vencor's application to the City Council for a final decision. The Zoning Board then voted unanimously that "the request for Special Use with said correction of PIN numbers and Legal Description will be presented to the City Council for the final decision as to whether they will be given the Permit." (Cplt., Exh. A–3.)

Prior to the next regularly scheduled City Council meeting, Bongiovanni drafted a memorandum containing written findings of fact based upon the February 21, 1991 Zoning Board meeting, supporting a recommendation that Vencor's application for a special use be granted.[1] The memo purported to be from the Northlake Zoning Board.[2] The City Council received, and apparently relied upon, this memo in connection with its decision to approve Vencor's application. (*See* Cplt., Exh. A–13, ¶ 5.)

Sometime after the City Council meeting, Dulceak learned of the memo and discovered that the memo, rather than her own minutes, had been submitted to the City Council. Dulceak raised the issue at the next meeting of the Zoning Board, held on March 21, 1991. In the minutes of that meeting, Dulceak, acting as Secretary, reported that "[the Board is] now getting back to discussing the minutes of our last meeting which were altered by the City Attorney Mr. Bongiovanni, in Findings of Fact presented to the Councilmen/women

---

**1.** It is unclear whether Bongiovanni prepared these findings under the direction of defendant Reid Paxson ("Paxson"). While Dulceak alleges in her Complaint that Paxson participated in drafting the findings of fact which were distributed to the City Council, her minutes of the meetings of March 21, 1991 and April 18, 1991 identify only Bongiovanni as the author of the findings of facts.

**2.** The memo heading on the findings of fact reads as follows:

FROM: Northlake Board of Appeals and Plan Commission City of Northlake, Illinois
TO: Honorable Mayor Reid M. Paxson & City Council
RE: Special Use Permit for Vencor, Inc.
Cplt., Exh. A–12.

at the last Council Meeting in place of the original minutes written by our Acting Secretary Pat Dulceak." (Cplt., Exh. A–16.) Two Zoning Board members objected to the memo on the basis that "[t]he revised minutes did not reflect the major questions raised by the Commission Members to Property Index Numbers and Easement Lands." (Cplt., Exh. A–16.) In response to these objections, Bongiovanni "was very defensive and said he did his findings based on what the Administration felt should appear on the Agenda for the Council Meeting." (*Id.*) The Board voted six to one to accept the minutes as written by the City Attorney.[3]

On April 18, 1991 the Zoning Board met again. At that meeting, the Board reconsidered its earlier vote to accept the "altered" minutes prepared by Bongiovanni. The Board voted unanimously to accept the minutes of February 21, 1991 as written by Dulceak and to reject Bongiovanni's minutes. In addition to the vote, four Board members criticized Bongiovanni's memo for undermining the Zoning Board's role in zoning decisions.[4] (Cplt., Exh. A–23.)

On April 20, 1991, Mayor Paxson signed and served a Notice of Hearing ("Notice") indicating that on April 29, 1991 he would hold a public hearing to show cause for Dulceak's removal as Chairperson and member of the Zoning Board.[5] (*See* Cplt., Exh. B–1.) The Notice cited Dulceak's failure to adequately perform her duties as Chairperson of the Zoning Board as well as her failure to maintain appropriate ethical standards as the basis for her removal. (*See* Cplt., Exh. B–1–B–2, ¶¶ 1 & 2.) The Notice outlined several specific instances of incompetence, including the allegation that Dulceak had reported groundless accusations in the minutes for the March 21, 1991 meeting. (*Id.*)

On April 29, 1991, Mayor Paxson held a public hearing. Based on this hearing, Paxson found that Dulceak

"did 1) fail to issue the findings of fact with the minutes of the February 21, 1991 Zoning Board of Appeals and Plan Commission hearing, 2) does not have adequate knowledge of the Northlake Zoning Ordinance, and 3) did make severe groundless accusations against the City's administration in the minutes of the March 21, 1991 Zoning Board Meeting without any substantiation whatsoever."

(Cplt., Exh. B–4, ¶ 8.) Accordingly, Paxson removed Dulceak from her position as Chairperson of the Zoning Board, leaving her membership on the Board and her position as Acting Secretary intact. (*Id.* at ¶ 10.)

## III. DISCUSSION

### A. Section 1983 Claims

We begin our discussion of Dulceak's § 1983 claims by observing that she has only brought claims against Paxson in his official capacity. A civil rights plaintiff must specify whether she is bringing suit against the defendant in his official or individual capacity. *See Hill v. Shelander*, 924 F.2d 1370 (7th Cir.1991) (noting that "[t]his is not an insignificant distinction."). Here, Dulceak fails to state expressly in which capacity she is suing Paxson. However, the Complaint asserts that Paxson was at all relevant times acting in his official capacity as mayor of Northlake. (*See* Cplt., Count I, ¶ 4.) Furthermore, both parties have treated the allegations as alleging an official capacity suit. In fact, the Defendants expressly stated that "Defendant Paxson is sued only in his official capacity." (Defs'. Mem., p. 17.) In her Response, Dulceak did not deny this characterization of the suit. Accordingly, the court will presume that Dulceak brings suit against Paxson only in his official capacity. *See Yeksigian v. Nappi*, 900 F.2d 101 (7th Cir.1990) ("In the absence of any express statement that the parties are being sued in their individual capacities, an allegation that the defendants were acting under col-

---

**3.** Dulceak voted with the majority. (*Id.*)

**4.** Dulceak was not one of the critics. (Cplt., Exh. A–23.)

**5.** Paxson held the notice and hearing pursuant to Illinois Revised Statutes, Chapter 24, Sections 3–11–1 and 11–13–2 and the Northlake Zoning Ordinance, § 705, ¶ a.

or of law generally is construed as a suit against the defendants in their official capacities only."); *Kolar v. County of Sangamon,* 756 F.2d 564, 567 (7th Cir.1985).[6]

A suit against a municipal official in his official capacity, in turn, is tantamount to a suit against the municipality itself. *See Kentucky v. Graham,* 473 U.S. 159, 166–67 & n. 14, 105 S.Ct. 3099, 3105–06 & n. 14, 87 L.Ed.2d 114 (1985); *Yeksigian,* 900 F.2d at 103 (citing *Graham,* 473 U.S. 159, 105 S.Ct. 3099) ("A suit against a municipal official in his official capacity is construed as a suit against the municipality."). Thus, a plaintiff must allege the same elements in both an official capacity suit and a suit against a municipality in its own name. *See Graham,* 473 U.S. at 166, 105 S.Ct. at 3105 (citing *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978)) (noting that in both an official capacity suit and a suit against a municipality in its own name, plaintiff must allege that an official policy or custom proximately caused a constitutional injury).

In order to state a claim under 42 U.S.C.A. § 1983 against a municipality, a plaintiff must allege a municipal policy or custom. *Monell,* 436 U.S. 658, 98 S.Ct. 2018 (1978); *Strauss v. City of Chicago,* 760 F.2d 765 (7th Cir.1985); *Zralka v. Tures,* 708 F.Supp. 948 (N.D.Ill.1989). It is not enough for the plaintiff merely to conclusorily allege the existence of a policy or custom. She must allege facts which, if true, support her assertion that a municipal policy caused her injury. *Strauss,* 760 F.2d at 769; *Zralka,* 708 F.Supp. at 950. In the instant case, Dulceak fails to allege, even conclusorily, the existence of a municipal policy or custom.[7]

There are three ways a plaintiff might try to establish the existence of an official policy or custom. First, a plaintiff

might allege an express municipal ordinance. Dulceak does not allege any such legislation.

Second, a plaintiff might allege a custom which is so widespread or persistent that it rises to the level of a policy which can be fairly attributed to the municipality. In order to establish a custom, a plaintiff may not use a single incident to establish a custom or policy, but must allege a series of incidents. *See Strauss,* 760 F.2d at 766–67. In her Complaint, Dulceak alleges only her own retaliatory dismissal. Although she argues that the City of Northlake was aware of Mayor Paxson's persistent dictatorial behavior (*see* Pltf's. Resp., ¶ 10), such assertions are insufficient. First, these statements do not appear in the Complaint. Additionally, in § 1983 actions a plaintiff must plead facts supporting an allegation that a custom exists. *Id.* at 766. Here, not only has Dulceak failed to allege a custom, she has pled no facts to support an allegation that a custom exists.

Finally, a plaintiff might allege that the defendant was an official policymaker with respect to the decision at issue. A city may be liable for a single action taken by an official responsible for setting policy in that area of the government's business. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). *See also Pembaur v. Cincinnati,* 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986); *Auriemma v. Rice,* 957 F.2d 397 (7th Cir.1992). In *Praprotnik,* 485 U.S. 112, 108 S.Ct. 915 (1988), the Supreme Court offered guidance on how to determine whether an official is a policymaker for purposes of § 1983. The Court noted:

"when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's

---

**6.** By asking for punitive damages against Paxson, which are only available against a defendant in an individual capacity suit, the court could conclude that Plaintiff has treated this as an individual capacity action. However, after noting that Plaintiff also asked for punitive damages against the city, which are clearly not recoverable, this court declines to draw such a conclusion.

**7.** Although she argues otherwise in her Response, Dulceak clearly founds Count II on the doctrine of *respondeat superior.* (*See* Cplt., Count II, ¶¶ 4, 7.) It is a matter of well-established law, however, that a municipality cannot be held liable under § 1983 on a theory of *respondeat superior. Monell,* 436 U.S. at 694, 98 S.Ct. at 2037.

conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."

*Id.* at 127, 108 S.Ct. at 926 (emphasis in original). Accordingly, the court stated that the issue of whether an official is a policymaker for the purposes of § 1983 is a question of state law. *Id.* at 124, 108 S.Ct. at 924–25.

Here, Dulceak has failed to allege that Paxson is a policymaker for the purposes of § 1983. While the mayor of Northlake may initiate a notice and hearing to remove appointed officials, it appears that removal is subject to the approval of the city council. *See* 24 Ill.Rev.Stat. ¶ 3–11–1. Accordingly, the city council, not the mayor, has final policymaking authority for determining what constitutes proper "cause" to remove the chairperson of the Zoning Board. However, Dulceak fails to allege any City Council involvement in her removal and thus fails to state a claim under § 1983.

Because Plaintiff has failed to allege any official policy or custom, she fails to state a claim under 42 U.S.C. § 1983 for which relief can be granted. Accordingly we grant the Defendants' combined motion and dismiss Counts I and II of the Plaintiff's Complaint.

### B.  Libel and Slander Claims

Counts III and IV of the Complaint contain state claims of libel and slander against Paxson and against the City of Northlake. Since these claims do not raise any independent federal questions, they must be dismissed. *See Simkunas v. Tardi*, 930 F.2d 1287 (7th Cir.1991) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)).

### IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Complaint is dismissed in its entirety. It is so ordered.